UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ANAGO FRANCHISING, INC., | ) |
|---|---|
| Plaintiff, | ) |
| | ) Case No. 11-cv-585 |
| v. | ) |
| | ) Judge John W. Darrah |
| IMTN, INC.; | ) |
| MYRON L. SCHUCHMAN; and | ) |
| TIM CONN, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Anago Franchising, Inc. ("Anago"), filed a three-count Amended Complaint, alleging trademark infringement, breach of contract, and a right to injunctive relief against three Defendants: IMTN, Inc. ("IMTN"); Myron L. Schuchman; and Tim Conn. Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint. For the reasons stated below, the Motion is granted.

### BACKGROUND

The following facts are taken from Anago's Amended Complaint (and from the documents attached as exhibits thereto) and are accepted as true for purposes of resolving this Motion to Dismiss.

Anago is the franchisor of commercial cleaning subfranchises to various individuals and businesses. (Am. Compl. ¶ 10.) Anago is incorporated and headquartered in Florida. (Am. Compl. ¶ 4.) IMTN is an Illinois corporation that was given the exclusive right to use Anago's franchise system in the Chicago area through a

Subfranchisor Rights Agreement (the "SRA") into which it entered with Anago on or about January 25, 2001.[1] (Am. Compl. ¶¶ 5, 14.) Schuchman, a citizen of Florida, served as IMTN's president. (Am. Compl. ¶ 6 & Ex. D.) Conn, an Illinois citizen, is IMTN's Director of Operations. (Am. Compl. ¶¶ 7, 12, 20.)

In the course of its business, Anago employs certain proprietary products, services, methodologies, and marks to identify the franchised businesses and services it provides. (Am. Compl. ¶ 10.) Among those proprietary marks is the registered word mark, "Anago," which was registered with the United States Patent and Trademark Office on March 4, 2003. (Am. Compl. ¶ 11.)

IMTN had the right to enter into agreements with unit franchisees and the right to enter into agreements to clean commercial accounts in the name of Anago, utilizing the Anago system. (Am. Compl. ¶ 15.) In exchange, IMTN agreed to the terms and conditions of the SRA and cash payments. (Am. Compl. ¶ 15.)

IMTN was required to use certain software, known as "NBDS." (Am. Compl. ¶ 17.) NBDS was developed by Anago and is critical to the operation of the franchise because it provides reporting to Anago on telemarketing efforts, new accounts,

---

[1] Anago alleges that it entered into the SRA with Schuchman in his individual capacity. Defendants note that the SRA expressly states that it is between Anago and IMTN and that Conn is not mentioned anywhere in the SRA. Defendants therefore move to dismiss all claims against Schuchman and Conn. Most of the allegations in Anago's Amended Complaint are asserted against all Defendants, without any specific indication as to how each of the three Defendants is liable. Because Anago's entire Amended Complaint is dismissed based on Anago's failure to state a claim under the Lanham Act (discussed below), it is not necessary to address Defendants' argument that Anago fails to allege any liability on the part of the individual Defendants. For the sake of convenience, the Court refers to "Defendants" collectively throughout this opinion, without resolving the issue as to any individual liability on the part of Schuchman or Conn.

cancellations, and overall market penetration. (Am. Compl. ¶ 17.) CleanTelligent is a software company that provides special software for commercial cleaning companies; it is in direct competition with Anago and its software products. (Am. Compl. ¶ 18.)

In May 2010, Anago discovered the use of the Anago mark on CleanTelligent's website, as well as a letter written by Conn, endorsing CleanTelligent's software. (*See* Am. Compl. ¶ 19 & Ex. E.) Shortly thereafter, Anago demanded that Defendants stop endorsing CleanTelligent's products and stop using Anago's name and mark in an unauthorized manner. (Am. Compl. ¶ 21.) Anago alleges, "Defendants did not stop and continue to use ANAGO's mark in this unauthorized way." (Am. Compl. ¶ 21.)

On or about July 27, 2010, Anago contacted Defendants regarding the approaching renewal of the SRA. (Am. Compl. ¶ 28.) Defendants were in default of some of their obligations under the SRA, and Anago offered four options to address the issue and make renewal possible. (Am. Compl. ¶ 28.) Defendants did not respond. (Am. Compl. ¶ 29.)

On December 3, 2010, Anago's counsel sent a letter to Defendants, notifying them that they were in default of the SRA and offering to waive the defaults if Defendants accepted one of the renewal options. (Am. Compl. ¶ 31.) Defendants responded with a letter dated December 15, 2010, outlining terms they required before accepting renewal. (Am. Compl. ¶ 32.) On December 22, 2010, Defendants and their counsel sent separate correspondence to Anago, stating that the disagreement between Defendants and Anago was approaching the point of "a potential dispute." (Am. Compl. ¶¶ 33-34.)

On January 10, 2011, Anago wrote to Defendants' counsel, notifying Defendants that Anago was terminating the SRA. (Am. Compl. ¶ 35.) Through counsel, Defendants responded with a letter dated January 14, 2011, denying any default, denying that Anago had provided a period for cure, and alleging that Anago violated the Illinois Franchise Disclosure Act. (Am. Compl. ¶ 36.)

On January 15, 2011, Conn sent a letter to one of IMTN's clients, Glenview Animal Hospital. (Am. Compl. ¶ 38.) In the letter, Conn stated that Defendants' franchise agreement with Anago was expiring on January 25, 2011, and that the client's account would now be serviced by Image One Facilities Solutions ("Image One").[2] (Am. Compl. ¶ 38.) The letter was written on Anago letterhead. (*See* Am. Compl. ¶ 38 & Ex. R.) That same day, Conn also sent a letter to the same client on Image One letterhead, informing the client that Image One would be taking over the servicing of its account. (Am. Compl. ¶ 39.)

Anago originally filed this action on January 26, 2011, as "an action for breach of [an SRA] and for injunctive relief, resulting from IMTN, INC. and MYRON SCHUCHMAN'S unwarranted refusal to comply with the SRA." (Compl. ¶ 1.) Jurisdiction was based on diversity of citizenship under 28 U.S.C. § 1332(a)(1). (Compl. ¶ 2.) In response to a motion to dismiss, in which Defendants asserted that Schuchman, like Anago, is a citizen of Florida, Anago filed an Amended Complaint. The Amended Complaint states that it is "an action for Trademark Infringement, the breach of [an SRA] and for injunctive relief, resulting from IMTN, INC. and MYRON SCHUCHMAN'S

---

[2] The SRA generally provided a term of ten years and was signed on January 25, 2001. (*See* Am. Compl. Ex. D.)

4

unauthorized use of ANAGO'S Trademark and unwarranted refusal to comply with the SRA." (Am. Compl. ¶ 1.) Defendants again moved to dismiss. Among other things, Defendants argue that Anago fails to state a claim for trademark infringement under the Lanham Act.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, the complaint must describe the claim in sufficient detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*Twombly*) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations in the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Equal Employment Opportunity Comm'n v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 569 n.14).

In addressing a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). However, "[w]here the well-settled pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (*Iqbal*). For a claim to be plausible, the plaintiff must put forth enough

"facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross*, 578 F.3d 574, 581 (*Brooks*) (quoting *Twombly*, 550 U.S. at 556). "Attachments to the complaint become a part of the complaint, and the court may consider those documents in ruling on a motion to dismiss." *Witzke v. Femal*, 376 F.3d 744, 749 (7th Cir. 2004); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

## ANALYSIS

"To prevail on a Lanham Act claim, a plaintiff must establish that (1) her mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). Here, there is no dispute that Anago has alleged ownership of a valid and protectable mark. Defendants argue only that Anago failed to allege that Defendants used that mark in commerce in a manner that is likely to cause confusion among consumers. (A service mark is "in use in commerce" when the mark "is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127.)

Anago alleges only two incidents in which Defendants used Anago's mark in an infringing manner; both incidents, referred to above, involve letters written by Defendants on Anago letterhead. The first letter was written by Conn to CleanTelligent. The letter is presented on Anago Chicago's letterhead, which contains Anago's service mark. Conn begins by stating, "As you know, I own a master Franchise of Anago, one of the fastest growing commercial cleaning franchises in America today." (*See* Am. Compl.

6

Ex. E.) He then goes on to endorse CleanTelligent's software on behalf of Anago. Anago alleges that the letter appeared on CleanTelligent's website and that Defendants were not authorized to use Anago's marks to endorse a competing company. (Am. Compl. ¶ 44.)

These allegations do not state a claim for infringement of a service mark. Anago does not allege how any customers would likely be confused as to the origin of Defendants' services. Indeed, the letter was sent during the term of the SRA, when Defendants were expressly authorized to provide services under the Anago name. Moreover, the letter does not involve the sale or advertising of Defendants' or Anago's services. It is not even alleged that CleanTelligent is a customer of Defendants. Rather, it would appear that Defendants are customers of CleanTelligent. If Conn violated the SRA by writing an endorsement letter on Anago letterhead, Anago might pursue that action under a breach-of-contract theory. But the mere fact that Anago's service mark appeared on Conn's letter does not turn an alleged SRA breach into a Lanham Act claim.

The second letter also appears on Defendants' Anago letterhead. It is written by Conn to Glenview Animal Hospital, one of Defendants' clients. (*See* Am. Compl. Ex. R.) The letter states that Defendants' franchise relationship with Anago would expire on January 25, 2011, and that operations would continue after that date with Image One Facility Solutions. The client was advised that Image One's name would appear on future invoices, that checks should be made payable to Image One, and that Image One could be reached at the same address and telephone number. Conn closes by stating, "We have enjoyed serving your facility under the Anago name, and trust you will be

comfortable and confident in the services furnished by Image One. Should you have any questions, please feel free to contact me . . . ." Thus, Conn clearly explains that Defendants will no longer be associated with Anago.

Again, Anago makes no specific allegation regarding how any customer of Defendants or Anago would likely be confused as to the source of Defendants' services. Anago merely alleges that Defendants were not "authorized to use ANAGO marks in letters to ANAGO clients which discussed their business being transferred to another company." Am. Compl. ¶ 45.

Anago's only allegation regarding any likelihood of confusion regarding the service mark contained on the letters is as follows:

> The continued unlawful use by Defendants of the ANAGO mark, for a company with identical services in the identical geographic area as those offered by ANAGO, has or will inevitably cause confusion and deception of the trade and the public and will lead the public erroneously to believe that Cleantelligent's or [Image One's] services are either sponsored by ANAGO or are offered with the consent and authority of ANAGO. Defendant's [sic] continued unlawful use of the mark has caused, and unless restrained will continue to cause, serious and irreparable injury to ANAGO.

Am. Compl. ¶ 46. However, Anago does not actually allege any *continued* use of Anago's mark. Nor do the two incidents of alleged infringement (the letters) support any reasonable inference that Defendants would continue to use Anago's marks in the future. Indeed, Conn's second letter expressly states that Defendants will cease operating under the Anago name and would continue under the Image One name.

Ultimately, Anago has failed to allege facts that plausibly suggest that Defendants used Anago's service mark in a manner that would result in a likelihood of confusion as

to the source of Defendants' services. Accordingly, Defendants' Motion to Dismiss is granted as to Count I.

With Count I out of play, there is no independent subject-matter jurisdiction over Anago's remaining claims for breach of contract and injunctive relief – Anago no longer alleges diversity jurisdiction – and the Court declines to exercise supplemental jurisdiction over Counts II and III. *Cf. Miller Aviation v. Milwaukee Cnty. Bd. of Supervisors*, 273 F.3d 722, 731 (7th Cir. 2001) ("[A] district court's decision to 'relinquish pendent jurisdiction before the federal claims have been tried is . . . the norm, not the exception, and such a decision will be reversed only in extraordinary circumstances.'" (quoting *Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001))). Anago's Amended Complaint is dismissed in its entirety.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is granted. Anago's Amended Complaint is dismissed in its entirety.

Date: 6-20-11

JOHN W. DARRAH
United States District Court Judge